CHARLES W. KEPLER, Appellee, v. GEORGE W. BORDER et al., Appellants.

**EQUITY: Extent of Jurisdiction—Voluntary Offer to Do Equity— 1 Shifting of Position.** Litigants who voluntarily offer to do equity, irrespective of any legal authority requiring them to so do, may not, after the court has entered reasonable orders with reference thereto, shift their position and claim that such orders are without any legal authority. So held with reference to the maintenance of a highway of necessity.

**HIGHWAYS: Of Necessity—Dominant Estate Owner Need Not 2 Maintain.** Principle recognized that the owner of a dominant estate through which extends a highway of necessity for the use of others is under no obligation to maintain such highway.

**EQUITY: Decree—Must Conform to Pleadings.** A decree in equity 3 must conform to the pleadings. Matters aside the pleadings will be expunged on appeal.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

. WEDNESDAY, FEBRUARY 14, 1917.

SUIT in equity, to enjoin the defendants from trespassing upon plaintiff's property. The defendants denied the trespass, and by way of cross-bill prayed that the plaintiff be enjoined from interfering with their use of certain "ways, roads and streets." There was a decree requiring the defendants each to contribute to the maintenance of certain roadways the sum of $5 per year, as a condition to their use

of such roadways. Both parties have appealed, the defendants first perfecting their appeal.—*Affirmed.*

*Redmond & Stewart,* for appellants.

*E. A. Johnson, Charles W. Kepler,* and *Charles W. Kepler & Son,* for appellee.

EVANS, J.—1. The pleadings of the parties do not indicate, except indirectly, the issues actually litigated. The petition charged the defendants with trespassing persistently upon the plaintiff's property. The defendants denied the trespass. The real controversy between the parties only developed in the evidence. Both plaintiff and defendants are landowners, all holding their respective titles under one Minott. More than 50 years ago, Minott was the owner of 200 acres or more of wooded land lying upon the east bank of the Cedar River. This included a parcel of ground upon the river bank, which appears to have been deemed suitable and attractive as a place of public summer resort. Minott built a hotel at the place, within 200 or 300 feet of the river bank. He also built a barn and a little store. He operated the hotel and the store for many years, and necessarily invited patrons thereto. In pursuance of this general scheme, he sold small parcels of ground about 50 feet square to various cottagers, with the intent that cottages be erected thereon. The defendants' are respectively owners of these small tracts, having built cottages thereon and having been in the use and enjoyment thereof for many years prior to the acquisition by the plaintiff of any interest in such property. These tracts or lots were platted by Minott, and his plat indicated certain ways or streets leading from the lots to the river. However, the ground so platted had no direct connection with a public highway, but was removed therefrom a distance of a mile and a half or more. The same was true of the ground upon

*Margin note:* 1. EQUITY: extent of jurisdiction: voluntary offer to do equity: shifting of position.

which Minott had erected his hotel and store. At the time
of the selling of such lots, Minott was maintaining a trav-
eled way extending from this property north to the north
line of his larger tract, a distance of about three fourths of
a mile. By some arrangement with other property own-
ers to the north, this same roadway was extended northerly
to a connection with the public highway about three quar-
ters of a mile distant from Minott's north line. This road-
way was maintained by Minott for more than 20 years
prior to the acquisition by plaintiff of any interest in the
property. The plaintiff acquired all of Minott's interest in
the entire tract by quitclaim deeds, or their equivalent, in
1903 and 1904. The plaintiff maintained such roadway at
his own expense until the year 1912, his property, however,
being in the possession of tenants at all times. The hotel
and store were leased to tenants and were operated as a
place of recreation. By reason of some necessary repairs,
and perhaps because of increased patronage and travel, the
maintenance of the roadway became burdensome, and the
plaintiff requested contribution from the cottage owners,
being 16 in number. Some of these consented to the con-
tribution, and others, including the defendants, refused.
The real question litigated between the parties, apparently
by mutual consent, was whether these cottage owners ought
in equity to be required to contribute to the expense of
maintaining the roadway. Though the petition of plaintiff
purported to be a suit to enjoin continuing trespass, Para-
graphs 15, 16, 17 and 18 thereof set forth the following:

"Par. 15. That a year ago last spring it was necessary
to replace a bridge which gave way, by reason of which giv-
ing way it was impossible for the defendants or either of
them to reach their cottages with any team or conveyance
of any kind, and thereupon plaintiff notified the defendants
both orally and in writing that he could not keep and main-
tain for their use and that of their tenants, a private park

of nearly two hundred acres of land, and repair wells, dock, roads and bridges without financial loss to himself, and if they desired to have the use of the park and desired to use plaintiff's wells and to enter upon his premises and use the private roads kept and maintained as aforesaid, that he would require each one of the defendants for the privilege aforesaid to pay $10 a year on each cottage.

"Par. 16.   That the expense of repairing the roads, bridges and culverts last year cost the plaintiff at least $150, and by reason of the heavy rains which came last fall it has cost plaintiff $75 last spring to maintain the same.

"Par. 17.   That some of the cottage owners have willingly paid said assessment, but these defendants declined, and threaten to continue to enter upon plaintiff's property and use the dock kept and maintained by plaintiff as aforesaid.

"Par. 18.   The plaintiff has never desired, and does not now desire to shut these defendants off from reaching their property, and has always been willing to consent to have them use the roads, wells, closets and grounds of the plaintiff for themselves and tenants, and to have the privilege of roaming over plaintiff's beautiful private park, provided they would co-operate with him in bearing at least a small portion of the burdens in furnishing the conveniences and privileges as aforesaid."

Plaintiff also attached to his petition the following written demand which he had made upon the cottage owners:

"TO THE COTTAGE OWNERS AT THE LOWER PALISADES:

"For ten years, I have, at my own expense, kept and maintained a private park, consisting of several hundred acres, built and maintained the bridges leading into the Palisades, have worked the roads leading to the Palisades, kept and maintained the grounds, have dug wells and spent time and money to keep the grounds from washing away,

and for which the cottage owners have reaped more benefit from the same than I have myself, and,

"Whereas, I have a large investment in the Palisades property, all of which has been used by the cottage owners and their tenants as a park, free of any expense to them thus far, and I have, therefore, concluded that I cannot, and will not, permit the cottage owners or their tenants to further trespass upon the grounds or to receive and enjoy any privileges of the Palisades, unless they contribute towards the expense of keeping up said grounds, and have, therefore, made an assessment of $10 to each cottage, to be paid on or before June 10th, 1912, which money I shall use or cause to be used in building and repairing the bridges, working the roads leading into the Palisades, fixing up the grounds, etc.

"To those who shall refuse to comply with this assessment, they will be legally notified to keep off of the said premises and will be denied the use of the grounds. If there is not some co-operate plan of this nature on the part of the cottage owners to act with me in the keeping up and improving of these grounds, as suggested, I shall be compelled, in justice to myself, to close the Palisades, after this year, as a resort, and use it for other purposes.

"We, the undersigned owners of the lower Palisades, hereby agree to accept of said assessment and pay the amount assessed to us on or before June 10th, 1912.

"Names                              Names"

To this part of the petition, the defendants responded with Paragraph 5 of their answer, as follows:

"Par. 5. These defendants have been willing to contribute something towards the maintenance of the road now claimed by plaintiff to be a private road, but deny the right of plaintiff to charge such sum as he sees fit, regardless of whether the money is expended on the road or not;

and they admit that he has made some improvements on the road and some improvements about the property, the hotel property and barns, and they are not responsible for what others than themselves do who visit the public resort."

We shall, therefore, recognize the issue as foreshadowed in the foregoing and as the parties have actually litigated it. The locality under consideration is known in this record as the Palisades. Counsel are agreed in argument that the roadway in question extending from the Palisades to the north line of the Minott land was the equivalent of a way of necessity, and that these cottage owners had a right to travel thereover, and to that extent had an easement therein.

2. HIGHWAYS: of necessity: dominant estate owner need not maintain.

Counsel are agreed also that the plaintiff, as owner of the dominant estate, was under no obligation to maintain the roadway, but that the duty of maintenance was wholly upon the defendant cottage owners. The authorities are concededly uniform on this question. If this were all, the solution would be simple. The plaintiff could abandon the care of the roadway to the defendants and allow them to care for it or neglect it, as they might choose. But the plaintiff is himself a joint user of the highway and has the same need of its use as do the defendants. He is within his rights in such use. It is evident, under the record, that more or less expenses must be incurred annually to maintain this road as passable for anyone. The plaintiff apparently has a greater interest at stake in the condition of the highway than any other person. Can he in equity require a contribution from those who are jointly interested with himself in such roadway? The briefs on neither side have dealt with this question as a general legal proposition, and we shall not deal with it as such. The argument *ad hominem* is quite decisive at this point. From the fore-

going quotations, it will be noted that the plaintiff in his petition tendered a waiver of the alleged trespass and a willingness to maintain the *status quo,* provided a reasonable contribution were made; that the defendants declared themselves "willing to contribute something towards the maintenance of the road now claimed by plaintiff to be a private road, but deny the right of plaintiff to charge such sum as he sees fit, regardless of whether the money is expended upon the road or not." The trial court by its decree took the parties at their word, and ordered the defendants to pay a reasonable contribution as tendered, and fixed the amount at $5 each per annum. The court also adjudged that the plaintiff should contribute and expend each year a sum equal to the total amount contributed by the defendants and other cottagers. The plaintiff complains of the amount thus allowed by the court as being insufficient. The defendants complain of such action of the court as being wholly unwarranted and without legal authority.

In view of the professions and tenders of equity held up to the court by both parties, we think that neither is now in a position to urge that the court exceeded its power or authority in fixing the amount of reasonable contribution from the defendants. There is nothing apparently inequitable in the result. It seems to us entirely consistent with general equity that reasonable contribution to the expense of necessary maintenance of this road should be made by all property owners who use it as a way of necessity to their property; and we think this applies also to the extension of the road from the north line of plaintiff's land to the public highway. The amount of contribution could not be fixed with mathematical certainty. Approximation was the best that could be done. The general effect of the order was to charge one half the maintenance to the plaintiff and the other half to the cottage owners, the court reserving jurisdiction for the purpose of future adjustments between them.

We think we ought not to interfere with this part of the decree on behalf of either party.

2.    The decree entered by the trial court contained the following provision:

3. EQUITY: decree: must conform to pleadings.

"Upon the payment of said $5 on or before the 1st day of April of each year, except this year, which shall be within 20 days after filing this decree, the owners or lessees or assigns or guests of such paying cottagers shall have and enjoy the privileges of the road grounds and river front at said place. Should any cottager fail to pay said sum of $5 per year at the time above stated, such cottager, his lessee and guests are restrained and prohibited and enjoined from using the said grounds and river front under penalty of being in contempt of this court."

Both parties complain of this provision. The plaintiff complains of the first part thereof because, for the payment of $5, it appears to give to the defendants an easement generally in the "grounds" of the plaintiff. The defendants complain of the last part thereof because it imposes upon them a harsh penalty for default in the payment of the $5 exacted from them. Prior provisions of the decree give the plaintiff a lien for the payment of such sum upon each cottage and its ground, and it is said this ought to be sufficient. In discussing this feature of the decree, it is made to appear in the briefs that there is a certain area of ground extending up to the docks and having dimensions of 200 feet by 500 feet, which is referred to as the Commons, or playgrounds. The defendants contend that they bought their lots with reference to these Commons, the same being in use as such at the time of the purchase. The plaintiff contends that these Commons are a mere appurtenance of the hotel, and are strictly the private grounds of the plaintiff. The evidence bearing on this question is slight and unsatisfactory. The pleadings contain no intimation of such an issue. The cross-bill of defendants prayed only that

plaintiff be enjoined from interfering with their use of the road. It is quite evident that the form of the decree went beyond both the pleadings and the contemplation of the parties in introducing their evidence. By the paragraphs which we have quoted from the plaintiff's petition, he conceded his willingness to a continuance of the previous *status quo*, provided the defendants be required to pay him their reasonable share of maintaining the roadway. This contribution has been exacted by the decree. The court, having allowed the contribution, was not called upon to adjudicate further the question of ultimate right as to such "grounds." We think, therefore, that such question should not have been adjudicated, and that it should now be reserved from the adjudication. That part of the decree, therefore, which we have quoted above will be eliminated from the decree. Likewise, the following on the same subject will be eliminated and reserved therefrom:

"The court further finds that the cottagers, their guests and tenants, have been for more than 10 years last past permitted as licensees only to enjoy the privileges of the rest and playgrounds, and the boat landing of the plaintiff, either by the plaintiff or his grantors."

And the decree entered below will be modified accordingly. In all other respects the decree will be—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.